```
1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF ILLINOIS
2

3    UNITED STATES OF AMERICA,)
                             )
4                PLAINTIFF, )
                             ) CRIMINAL ACTION
5           VS.              ) FILE NO. 20-30046
                             )          21-30009
6                            )
     RANDY S. BULL,          ) TRANSCRIPT OF
7                            ) PROCEEDINGS
                 DEFENDANT. )
8    _____)

9

10             BEFORE THE HONORABLE COLLEEN LAWLESS
             Tuesday, December 12, 2023, 11:16 a.m.
11                     Springfield, Illinois

12
     APPEARANCES:
13

14      FOR THE GOVERNMENT:              TANNER JACOBS
                                         ASSISTANT U.S. ATTORNEY
                                         100 NE Monroe Street
15                                       Peoria, Illinois  61602

16      FOR THE DEFENDANT:               KARL BRYNING
                                         ASSISTANT FEDERAL DEFENDER
17                                       401 Main Street #1500
                                         Peoria, Illinois 61602
18

19

20               DEBRA M. THORNBURG, CSR, RPR, CRR
                  FEDERAL OFFICIAL COURT REPORTER
21                  UNITED STATES COURTHOUSE
                     100 NE Monroe Street
22                  PEORIA, ILLINOIS 61602

23

24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
25   PRODUCED BY CAT
```

PROCEEDINGS

1

2          THE COURT:  Thank you, everyone.  We are on the

3    record on two cases today, the first one being 20-cr-30046.

4    Also 21-cr-30009-02, both United States of America v. Randy

5    Bull.  We have present on behalf of the Government -- we have

6    the AUSA Tanner Jacobs.  We have the defendant present in

7    person along with his counsel, Assistant Federal Defender Karl

8    Bryning.

9          We also have present here today United States

10   Probation Officer who prepared the Presentence Investigation

11   Reports in this matter, and his name is Mike Murphy.

12         So good afternoon, everyone, and we're set here

13   today for a sentencing hearing.  Now, before -- one second.

14   I apologize.  Now, before I address the defendant personally,

15   I will go through a short procedural history as to how we

16   got here and where we are, so in 20-cr-30046, Mr. Bull

17   appeared before United States Magistrate Judge Karen McNaught

18   on May 25, 2023 and plead guilty to Count 1 of a single-count

19   indictment charging Distribution of 50 Grams or More of

20   Methamphetamine, in violation of 21 United States Code Section

21   841(A)(1) as well as 841(B)(1)(a).

22         On that same day, the defendant plead guilty to four

23   counts of a 12-count indictment pursuant to a written plea

24   agreement under Federal Criminal Rule 11(C)(1)(c), and Count 1

25   charged Conspiracy to Commit Escape of Prisoners in custody of

1    Institution, in violation of 18 United States Code Section

2    371.

3              Now, what I want you to know, sir, is before this,

4    and then the -- I apologize.  Hold on one moment.

5              Now, in preparation for today's hearing, I have

6    reviewed the revised Presentence Investigation Reports, the

7    Government's sentencing commentary, the defendant's sentencing

8    commentary.  I've also reviewed Mr. Bull's motion to dismiss

9    the information charging prior offense under 21 United States

10   Code Section 851, the Government's response to that motion as

11   well as the defendant's reply.

12             Now, before we go forward, Mr. Bull, in all of my

13   cases in which there is sentencing, I address the defendant

14   personally.  I know you are represented by very good counsel

15   who has explained to you what we're going to do here today,

16   but I like for defendants to hear it from me personally.

17             So before we begin, I'll take this time to advise

18   you that under the Sentencing Reform Act of 1984, the United

19   States Sentencing Commission has issued guidelines for judges

20   to consider when sentencing someone in a criminal case.  Those

21   sentencing guidelines are merely guidelines, and they are not

22   binding on the judges.

23             However, I am still required to calculate what the

24   proper guideline sentencing range is and to consider that

25   range along with other factors at the time of sentencing.

1    Now, in this case there are multiple objections, so I'm going

2    to hear those objections, take any evidence that is necessary

3    and rule on those objections.

4         After doing so, I will then make the proper

5    calculations under the guidelines and determine what the

6    guideline range is.  I will listen and consider the arguments

7    presented by the Government as well as your attorney as it

8    relates to sentencing, and I will listen to any statement that

9    you care to make to me.

10        After that, I will consider whether a guideline

11   sentence is appropriate after considering whether to vary

12   upward or downward from the guideline, and I will consider all

13   of the sentencing factors contained in 18 United States Code

14   Section 3553(a) to determine whether I impose a guideline

15   sentence or a nonguideline sentence.

16        Do you understand what's going to happen here today,

17   sir?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  All right.  Now, throughout this

20   proceeding you can speak to your attorney at any time.  Do you

21   understand that?

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  And I'm going to be asking you a series

24   of questions today, and I need to make sure that you

25   understand what I am asking you, so please make sure if you do

1    not understand something that I have said, that you tell me

2    that and I can repeat it.  I can rephrase it.  You can confer

3    with your attorney.  Do you understand that?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  All right.  So we'll start with what I

6    think is the best course, is to go with the motion to dismiss

7    argument first.

8            Should we do that first, Mr. Jacobs?

9            MR. JACOBS:  That's fine, your Honor.

10           THE COURT:  All right.  We'll start with that, so

11   the motion to dismiss was filed by the defendant.

12           So Mr. Bryning, you can go ahead.

13           MR. BRYNING:  Judge, would you prefer I stay seated

14   or go up to the mike?

15           THE COURT:  So in my courtroom, you can be wherever

16   makes you comfortable, so you can stand and present, you can

17   stay seated.  You can come to the podium.  It's up to you.

18           MR. BRYNING:  Okay.  Thank you.  So your Honor, I

19   know this case has been briefed quite a bit.

20           THE COURT:  It has.

21           MR. BRYNING:  A lot of paper here we have, but the

22   Government -- the reply to the Government's response is what I

23   think is best to he can focus on in terms of this argument.

24   I've done my best to lay that out as clearly as possible.

25   Essentially what it comes down to is that the definitions of

1    both home invasion and conspiracy to commit murder are broader

2    than the definitions that the federal government uses.

3         Those definitions are overly broad and therefore

4    cannot be used to enhance this statutory mandatory minimum

5    from 10 years to 15 years under Section 851, so I think that's

6    the clearest statement of our argument, and I'm not at this

7    time into the categorical approach, the modified categorical

8    approach.

9         All of that, I think that's all been laid out in the

10   briefing fairly well, but the bottom line here is that those

11   definitions, the definitions that are used in federal, are

12   being used -- it's an attempt to fit state definitions into a

13   federal framework, and that federal framework can't accept

14   definitions that are broader because they would bring in more

15   conduct than it was intended by the federal legislation, and

16   that's exactly what's being done in this case in the two --

17   and just in terms of the 851 in terms of what's been filed by

18   the Government to support 851.

19        Initially I think one was filed, one prior was

20   alleged, and then another prior was added by the Government,

21   although they are only seeking an enhancement from 10 to 15.

22   It's like -- I think it's an alternate theory of one of these

23   may be enough to enhance.

24        Our position is that neither one of them are, and

25   then, of course, that position is similar to the argument that

1   we will then make in terms of the Career Offender Guideline as

2   well, so that's the -- that's the essence of it, your Honor.

3          THE COURT:  All right.  Thank you very much.

4          MR. BRYNING:  Thank you.

5          THE COURT:  Mr. Jacobs?

6          MR. JACOBS:  Certainly, your Honor.  I don't

7   disagree with what Counsel said in terms of how we ultimately

8   have to try to figure this out in terms of using the

9   categorical approach.  That's absolutely correct, but what

10  we're failing to -- or I should say what counsel and the

11  defendant are failing to acknowledge is that let's start with

12  the home invasion.

13         There's not a single case that they've cited in

14  which there was not physical contact or contact that overcame

15  someone's will in any of those cases that caused the emotional

16  otherwise injury.  The reply that Counsel filed to our

17  response, that basically states, well, even if we accepted

18  there's physical contact, it's not enough to overcome that

19  injury, and they also state that we don't have to look at the

20  jury instructions for that determination if there even has to

21  be physical contact.

22         The Government obviously agrees that because, 1, the

23  Supreme Court in Erick, or Warick, didn't say, in fact, that

24  there had to be no contact at all.  That was a Fourth Judicial

25  Circuit case and only a fourth judicial circuit case that has

1    said that.  The Supreme Court of Illinois has not weighed in

2    on that specific point.  In fact, the promulgation of the jury

3    instructions themselves have not changed since 2016 when

4    Dorsey was decided.

5          In fact, they have changed in a lot of other ways.

6    In fact, the different portions of assault and different

7    definitions under other subsections have been, in fact,

8    modified or changed with the law but they have not.  The

9    Courts have not found a reason to update that jury instruction

10   which says, yes, injury can be physical, emotional or mental,

11   but it has to have physical contact involved if it's the

12   result of physical contact, so we start there.

13         Then again, if we look to Justice Scalia's

14   statements, I believe it's in Stoklin, which basically says it

15   has to be enough to overcome someone's will, punching, biting

16   or otherwise, and the example given by defense counsel was

17   sitting on someone's lap, which actually sitting on someone's

18   lap in that case in Warick, in placing their hand against that

19   young victim's mouth.  It's a lot more than simply sitting

20   there and just saying oh, you're okay.

21         What we've got in every single one of those cases is

22   the overcoming of that, is physical contact, is force, and I

23   don't think there's been a single case in which there isn't

24   actual force of someone in the house that causes that

25   physical, mental or emotional trauma to that victim.

1          If we turn to the conspiracy to murder, I think it's

2   pretty clear, based on the Government's briefing, there's only

3   one way in which to commit conspiracy to commit murder, and

4   that's intentionally and knowingly.  You cannot conspire, and

5   I don't think there's any argument by the defendant that you

6   can conspire recklessly.  You have to intentionally intend to

7   kill someone by conspiring to commit to kill them.

8          The words themselves define the action.  Not only

9   that, but the actual conspiracy to commit murder charge, the

10  First Degree Murder charge, actually has a breakdown

11  underneath the jury instruction which it says you can't use

12  the reckless intention stuff there.  It's supposed to be for

13  the intentional either causing great bodily injury, the

14  violent action or the actual death itself that causes the

15  death, much like the malice aforethought language within the

16  federal definition of First Degree Murder because we believe

17  they match up both under the enumerated clause for the

18  conspiracy to commit murder portion and because we believe

19  that they match up with the attempted use or use of violence

20  portion under 3559.  We believe that both of them do, in fact,

21  meet the definitions and do not exceed them for the federal

22  definitions.  Thank you.

23          THE COURT:  Thank you very much.

24          Mr. Bryning, I would like your argument as it

25  relates to whether the physical contact in question changes

1    the home invasion.  I know you're saying it's overly broad

2    under any circumstance.  Is that the defendant's position?

3          MR. BRYNING:  The defendant's position is that

4    Illinois home invasion includes psychological or emotional

5    trauma.

6          THE COURT:  Uh-huh.

7          MR. BRYNING:  But it doesn't have to be specifically

8    caused by that trauma, so I think in that respect the

9    definition in Illinois is broader than the federal

10   definition.

11         THE COURT:  Okay.  All right.  Now, as it relates to

12   the remaining objections, do you want to go through -- let's

13   go through those objections so we can handle all of that and

14   then I can take a break to then make sure that I have the

15   proper calculation of guideline based on that, so I believe

16   that would handle, then -- let's go through the objections.

17         MR. BRYNING:  Your Honor?

18         THE COURT:  Yes.

19         MR. BRYNING:  If I may, there's -- I think there's a

20   couple of corrections to the presentence report, the final

21   presentence report, paragraph 26 and 34 regarding obstruction

22   of justice that were resolved.

23         THE COURT:  And that would have been the third

24   objection, correct?

25         MR. JACOBS:  I believe that's correct.  Yes,

1    correct.  There were three objections.

2           THE COURT:  There were three objections, the first

3    one being to paragraph 2, 4, 36, that's having to do with

4    prior convictions which we've just argued.  Okay.  The second

5    being the drug quantity, relevant conduct.  Let's try to go in

6    order just so -- because I do understand, it's my

7    understanding that the third objection has been resolved?

8           MR. BRYNING:  Yes.

9           MR. JACOBS:  Yes.

10          THE COURT:  Okay.  So let's go to the second one

11   then, so second objection being the drug quantity and relevant

12   conduct.  Do you wish to be heard on that?

13          MR. BRYNING:  Yes, just briefly, your Honor.

14          THE COURT:  Go ahead.

15          MR. BRYNING:  It is Objection No. 2, your Honor?

16          THE COURT:  Yes, it is.

17          MR. BRYNING:  Okay.  Your Honor, I won't go and read

18   through everything that's already been summarized in the

19   presentence report objection.  I think that accurately

20   summarizes our argument.  However, there are a couple of

21   things that I would add.  In relation to the statements of Mr.

22   Bull at the time of arrest, I think it's tempting for any

23   person who's arrested to do what they hope the police want or

24   to tell the police what they want to hear.

25          And essentially here I think the statements related

1   to relevant conduct, if you look at the actual paragraphs in
2   the presentence report, and I'll see if I can find those right
3   here, paragraph, I think, 21 and 22 -- okay.  In paragraph 20,
4   they note that Mr. Bull stated that he also uses ice
5   methamphetamine, and then in 21 -- in 21 Mr. Bull states that
6   he obtained it from individuals known as Fat D, Fat and D.

7           I mean, if you read through this, it doesn't sound
8   quite credible to begin with.  You've got first names of
9   people, and we see in the presentence report, and the same
10  goes for paragraph 22.  It's just kind of throwing numbers and
11  aliases up there, and many times in Presentence Investigation
12  Reports we'll see -- when it comes to statements by the
13  defendant or statements by family members, we'll see at the
14  end uncorroborated.  That's exactly what these are.  These are
15  uncorroborated statements.

16          Now, I know the Government's arguing that he's the
17  person who said them and so therefore he corroborated his own
18  statements.  He's in the best position to know.  I understand
19  that's the argument, but I think when a person is arrested
20  this side of the road, they've been arrested in a controlled
21  buy, I think in this case Mr. Bull was basically auditioning
22  for that spot.

23          He was puffing up, trying to make himself look more
24  important than he was.  I think you have further evidence for
25  that in this case because the first controlled buy yielded

1    what?  72 or something grams, 71 point something grams.  The

2    second buy was rock salt.

3            I mean, these enhancements and whether it's a

4    statutory enhancement or a guideline enhancement or even the

5    mere difference between actual methamphetamine as opposed to

6    mixture and substance containing methamphetamine are aimed at

7    penalizing the worst of the worst, are aimed at penalizing

8    drug kingpins.

9            There's not a lot of drug kingpins out there that

10   are pitching rock salt into somebody's lap, so this is an

11   overstatement.  This is puffery, and I think it even on its

12   face goes beyond being credible, so that's the essence of our

13   argument, your Honor.

14           THE COURT:  Thank you very much.

15           Mr. Jacobs?

16           MR. JACOBS:  Yes, your Honor.  The defendant in his

17   objection notes that 7th Circuit has demanded more than simple

18   hearsay for enhancements on guidelines.  However, as the

19   Government specifically responded and as I would note here,

20   the defendant's statements are, in fact, not hearsay and, in

21   fact, the reason that they're not hearsay is because when the

22   rules were written and as they've been handed down, when

23   someone makes a statement against their own interest, we

24   believe them to be reliable statements, just as we are to

25   believe here.

1     When the defendant gets up, he's gonna ask you to

2 believe everything that he's saying in terms of when he makes

3 his statement in allocution today and each and every other

4 time he speaks he's gonna ask you to take those as reliable

5 statements.  Those are his own self-serving statements.

6 However, when the opposing party uses them, they no longer

7 become hearsay.  They become palpable evidence that can be

8 used against him.

9     If I were to bring those same statements up against

10 him at trial to show that he intended to sell methamphetamine

11 for the purpose of doing so and that he had in the past, those

12 would be substantive evidence statements that could be used

13 for the jury to consider, and they would not even be

14 considered hearsay.  Therefore, they are not unreliable

15 hearsay because they are not hearsay to begin with.

16     The defendant, moreover, is the one that said

17 them.  He is the most reliable party to know exactly how

18 much he's been selling and how much he's obtained to sell.

19 With that, your Honor, while the arguments by defense

20 counsel may be arguments for why he should receive a variance

21 or below-guideline sentence, they are not arguments that

22 should specifically move this Court to change the guideline

23 calculations.

24     THE COURT:  Thank you very much.

25     MR. BRYNING:  Your Honor, may I respond briefly?

1          THE COURT:  Yes, you may.

2          MR. BRYNING:  Our argument is that these were

3    self-serving statements and that you can't have it both ways.

4    You can't say, well, Mr. Bull's credible on things that we

5    want him to be credible on but he lacks all credibility on

6    things that increase his sentence, that we don't want him to

7    be credible on, so our argument isn't that this was hearsay.

8    It's obviously statements of a defendant, which would not be

9    hearsay, but that it's not reliable and it was self-serving at

10   that time.

11         THE COURT:  Thank you very much.  All right.  And

12   then the third objection is the obstruction of justice

13   objection, which is my understanding is -- is it being

14   withdrawn or resolved by the Government withdrawing the

15   enhancement?

16         MR. JACOBS:  I believe it's the latter, your Honor,

17   in that the Government is no longer moving for that

18   enhancement to be included by the Court and we're asking that

19   you not consider the plus 2 enhancement under construction

20   because he is, in fact -- his culpability is, in fact, being

21   taken on the other case.

22         THE COURT:  That is correct.  So I will note that

23   when doing the calculations, and then the last one is the

24   objection as relates to career offender.

25         MR. JACOBS:  I don't know if defense counsel

1    disagrees, but those are very similar and have been briefed

2    similarly because of the categorical approach as to the 851s.

3    The Government would stand on its briefing based on those and

4    the arguments made already as it relates to those specific

5    ones.

6                THE COURT:  Same for the defendant?

7                MR. BRYNING:  The defense will as well.  The only

8    thing I would add is the argument that I just made about these

9    being for the worst of the worst.  The guidelines are -- the

10   argument for the guidelines is somewhat different.  They're

11   the same in terms of the definitions being overbroad in

12   Illinois and not being applicable therefore to the federal

13   law, but, yes, that's the argument that I was trying to bring

14   out before as well.

15               THE COURT:  All right.  Thank you very much.  I'm

16   gonna take a short recess as relates to the calculations, and

17   then I'll come back out.  Thank you.

18               (Break taken from 1:57 p.m. to 2:12 p.m.)

19               THE COURT:  All right.  We are back on the record in

20   20-cr-30046 as well as 20-cr-10009-02.  I've had the

21   opportunity to review and consider, obviously, this was fully

22   briefed, but I did want to hear from counsel as relates to

23   some of the arguments as well as the objections before making

24   the proper calculations under the sentencing guidelines, so I

25   have review the motion to dismiss and considered the arguments

1    of counsel.

2              Now, as it relates to, obviously, two different

3    offenses and I believe that the -- under the relevant

4    definition it is clear that the conspiracy to commit murder

5    qualifies as a violent felony and so I don't believe that is

6    overly broad as it relates to the arguments made by counsel

7    for the defendant today.

8              And I want to make sure we go through and I think

9    the Elder case in the 7th Circuit is relevant here that a

10   state crime may qualify as a predicate conviction only if the

11   elements of the state crime mirror or are narrower than the

12   elements of the generic crime.

13             Also, the Elder case, the 7th Circuit 2018 states

14   that if state law defines the offense more broadly than the

15   federal statute, the prior conviction doesn't qualify as a

16   predicate offense even if the defendant's conduct satisfies

17   all of the elements of the federal offense, so as I've

18   considered this, the -- I believe the Government's argument as

19   to home invasion and when looking at the cited sources,

20   obviously People v. Dougherty from the Fourth District,

21   Illinois case, stated that while physical conduct can

22   accompany psychological trauma, the Court clearly found that

23   psychological or emotional trauma standing alone could support

24   a conviction for home invasion.

25             I mean, so under that circumstance, I think it is

1    conceivable that one can be convicted of home invasion without

2    the -- without the necessary physical force that is required.

3    So based on that, I do believe that the home invasion does not

4    qualify as a prior conviction so I am granting in part the

5    motion to dismiss and denying it in part as relates to the

6    851.

7         So that should also resolve the first objection as

8    well as the fourth objection, and the third objection

9    contained within the PSR has already been resolved.  We're not

10   adjusting it for the obstruction of justice or enhancing for

11   the obstruction of justice.

12        As 2 relates to the statements made by the defendant

13   at the time of arrest, I believe those were sufficiently

14   reliable for the Court to consider in this case, so I'm

15   overruling that objection.

16        Are there any further objections that I need to

17   address that I haven't as it relates to my rulings, to the

18   Government?

19        MR. JACOBS:  I think we need a clarification, your

20   Honor.  When you say the first and the fourth, so you've

21   resolved the 851.  We didn't talk about career offender, and

22   then I don't believe you've actually stated specifically how

23   you have found as to career offender.  I think I understand

24   what you mean, but I don't think you've actually stated that

25   specifically.

1    THE COURT:  Okay.  So as it relates to the -- and

2    let me go directly to that.  The defendant through the -- on

3    the fourth objection objects to the qualification of both of

4    his prior convictions as career offender.  I am encompassing

5    the same ruling as relates to the motion to dismiss the

6    indictment, so I do not believe there are two offenses to then

7    get to the career offender status and so does that

8    sufficiently identify it?

9    MR. JACOBS:  That is perfect, your Honor.  Thank

10   you.

11   THE COURT:  No problem.  And thank you for

12   requesting that clarification.  So after my rulings, the

13   defendant's total offense level in the -- and I'm gonna refer

14   to these cases as the 20 case and the 21 case going forward so

15   I don't have to keep saying the full case number.  So in the

16   20 case Defendant's total offense level after ruling on the

17   objections would be 31 with a Criminal History Category of V.

18   I believe the defendant has 11 criminal history

19   points that puts us in a Category V.  Under that, it would be

20   the guideline provision with a total offense level of 34,

21   Criminal History Category of V.  The guideline would be 268 to

22   210 months.  Statutory provision for imprisonment would be 10

23   years to life.  Supervised release under the statute 5 years.

24   Guideline provision would be 5 years.

25   The defendant is ineligible for probation under the

1   20 case.  The fine under the statute would be 10 million.  The

2   fine range under the guideline would be $3,000 to $500,000.

3   Restitution is not an issue in this case, and the special

4   assessment would be $100.

5          Mr. Jacobs?

6          MR. JACOBS:  I believe you said statutory penalty

7   would be 10 years.  Because you found at least one of them to

8   qualify as an 851 predicate, it's 15.

9          THE COURT:  I apologize.  It's 15.  You are correct.

10  Is that correct?  Do you agree with that?

11         MR. BRYNING:  Yes, Judge.  I agree to that to the

12  extent --

13         THE COURT:  That that is the proper calculation.

14         MR. BRYNING:  I don't want to be accused of having

15  waived any issue.

16         THE COURT:  You did not waive any issue when I said

17  do you agree with it after considering my rulings that the

18  proper calculation for the statutory imprisonment would be 15

19  years to life.

20         MR. BRYNING:  Yes, based upon your ruling.

21         THE COURT:  Based upon my ruling without waiving any

22  of the objections made prior to the rulings.  So under that I

23  believe those calculations are accurate, and we will then move

24  to the calculations as it relates to the 21 case and so Counts

25  1, 2, 3, and 7 are grouped for guideline calculation purposes.

According to the PSR, Mr. Bull's offense level would be 13

with a 2-level reduction for acceptance of responsibility.

That would take us to a total offense level of 11.

Criminal history score of 11, criminal history category of V.

Statutory maximum term of imprisonment on Count 1 is 5 years.

As to Count 2, maximum term is 5.  Same for Count 3 as well as

Count 7.  The guideline range with a total adjusted offense

level of 11 with a Criminal History Category V results in a

Advisory Guideline Range of 24 to 30 months.

According to the statute, the Court may impose a

supervised release of not more than 3 years per count.

Guideline range would be 1 to 3 years per count.

Because the defendant is eligible for a term up to 5

years probation per count under the statute but according to

the guideline provision Defendant is not eligible for

probation because he is in Zone D, the statutory maximum fine

is $250,000.  The fine range under the sentencing guidelines

is 4,000 to 40,000.  Mandatory special assessment of $100 per

count is statutorily required to be imposed.

Restitution in the -- I want to make sure we have

this correct.  Restitution in the total amount of $2,292.14

may be ordered in this case joint and several with the

co-defendants.  Is that a correct --

MR. JACOBS:  That's correct, your Honor.

THE COURT:  And it would be due and owing to the

1  Sangamon County Sheriff's Office in Springfield.

2            MR. JACOBS:  That is also correct.  We'd have to

3  check if it's been paid already because I know at least two

4  other individuals who were already sentenced may have made

5  payments.

6            THE COURT:  All right.  Those are my findings.

7            Any objections to that?

8            MR. BRYNING:  No, your Honor.

9            MR. JACOBS:  Only, again, not to waive any of the

10  objections already made and already made by counsel, we do

11  have a legal objection, obviously, to the finding of

12  noncareer, but based on your Honor's ruling, no.

13            THE COURT:  Thank you very much.  So at this point

14  is either side going to present any evidence?

15            MR. JACOBS:  The Government does not intend to, your

16  Honor.

17            MR. BRYNING:  Your Honor, the defense filed a

18  sentencing commentary and attached to that commentary are a

19  number of letters.  Other than that, the defense is not

20  presenting any evidence.

21            THE COURT:  All right.  Thank you very much.  I

22  appreciate that.  I have reviewed those in preparation for

23  today's sentencing.  Then we will go to the conditions of

24  supervised release.

25            Mr. Bull, have you reviewed the conditions of

1  supervised release?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  All right.  And I will pull those out.

4  And you've reviewed them, and they are jointly on one

5  document.  Is that correct for everybody?  There's only one?

6          MR. BRYNING:  Yes, your Honor.

7          MR. JACOBS:  Yes.  Sorry, your Honor.

8          THE COURT:  They're in the two different cases.

9  They're not separate.

10          MR. JACOBS:  Yes.

11          THE COURT:  I just wanted to make sure we're only

12  talking about one because I only have one in front of me.  So

13  conditions of supervised release for both the 20 and 21 case

14  are on the same document.

15          Mr. Bull, have you had a sufficient period of time

16  to review the conditions of supervised release?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Have you had a sufficient period of time

19  to confer with your attorney not only about the conditions of

20  supervised release but also the Presentence Investigation

21  Report?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  And are you satisfied with Mr. Bryning's

24  presentation of you throughout these proceedings?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  All right.  Now, as relates to the
2     conditions of supervised release, have you reviewed them in
3     detail?
4          THE DEFENDANT:  Yes, ma'am.
5          THE COURT:  And I see that your signature is on the
6     fifth page, the final page of this document.  Is that your
7     signature?
8          THE DEFENDANT:  Yes, ma'am.
9          THE COURT:  And I also see that next to each
10    condition are your initials.  Did you initial?
11         THE DEFENDANT:  Yes, ma'am.
12         THE COURT:  Did you ask all of the questions that
13    you wanted to ask to your attorney as it relates to the
14    conditions of supervised release?
15         THE DEFENDANT:  Yes, ma'am.
16         THE COURT:  And did he appropriately respond to you
17    as relates to those questions?
18         THE DEFENDANT:  Yes, ma'am.
19         THE COURT:  All right.  Do you have any objections
20    to the conditions of supervised release?
21         THE DEFENDANT:  No, ma'am.
22         THE COURT:  Do you understand that if you -- if you
23    say you do not have an objection at this time to the
24    conditions of supervised release, you may be waiving that
25    objection going forward?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  All right.  Mr. Bryning, do you have any

3    objections on behalf of your client as to the conditions of

4    supervised release?

5          MR. BRYNING:  No, your Honor.

6          THE COURT:  Mr. Jacobs, by the Government?

7          MR. JACOBS:  No, your Honor.  Thank you.

8          THE COURT:  All right.  Now, Mr. Bull, do you waive

9    me reading the conditions of supervised release out loud to

10   you?

11         THE DEFENDANT:  Give me one second.

12         MR. BRYNING:  He wants to ask me a question.

13   (Discussion held off the record between counsel and Defendant)

14         MR. BRYNING:  Thank you, your Honor.

15         THE COURT:  All right.  So my question to you, sir,

16   is did you want me to read the conditions of supervised

17   release out loud to you right now?

18         THE DEFENDANT:  No, ma'am.

19         THE COURT:  All right.  Then I will take that

20   assuming counsel is waiving my oral reading of the conditions?

21         MR. JACOBS:  The Government is, your Honor.

22         MR. BRYNING:  Defense is, Judge.

23         THE COURT:  All right.  Then I will hand the

24   conditions of supervised release to Madam Clerk, and we can go

25   forward with argument.

1           MR. JACOBS:  Certainly, your Honor.  May it please

2   the Court?

3           THE COURT:  Yes, you may.

4           MR. JACOBS:  Your Honor, as I did in my sentencing

5   commentary, I'm gonna lump the arguments together.  We have an

6   agreed-upon sentence as to the second case if your Honor

7   accepts it, that being one year consecutive to whatever your

8   Honor gives on his 20 case, and if it's okay I will also refer

9   to them as the 20 and 21 case.

10          THE COURT:  Yes.

11          MR. JACOBS:  In the 20 case, your Honor, obviously

12  it's a drug-dealing case.  It's an individual who has decided

13  that he is going to deal poison to other people, a poison that

14  is incredibly addictive and does, in fact, cause the downfall

15  and violence in the community and the downfall of a lot of

16  different lives.

17          Unfortunately, drug dealing and drugs in general

18  affect a lot of other crimes.  So when an individual decides

19  to commit drug dealing, they're, in fact, contributing to

20  those other crimes because they are contributing to another

21  person's addiction.  And that's exactly what this defendant

22  decided he would do even though he, as he has stated

23  throughout the PSRs, has a drug problem himself.

24          So even knowing that, even knowing the collapse that

25  that can cause to someone's family, even know what it can do

1   to someone and what it can do to their lives, he decided that,

2   no, I'm going to continue that cycle.  I'm going to continue

3   to push that poison into my community.  I'm going to be a

4   danger to others by doing so.

5          Now, once he was arrested, once he was caught, he

6   was in a facility that was supposed to make sure that no one

7   else can be harmed by him and instead he took that

8   opportunity, he took the opportunity allowed because there

9   were a lot more restrictions within the jail that didn't allow

10  as much contact between guards and prisoners, and he went

11  ahead and he decided that he would move in, kick another

12  person out of their cell, join Jim Russwinkel and attempt to

13  break out of jail.

14         Now, he didn't do that by just punching a hole in

15  the window.  No, they agreed that they would bring in hack

16  saws, blades and crow bars and prybars and tow straps and a

17  litany of other things that are incredibly dangerous in a

18  jail, let alone a confined space in an overly confined

19  environment that you have there.

20         We had Shawshank Redemption moment there where

21  inside a book you actually had a blade itself that had been

22  cut into the book and set in there.  Within the defendant's

23  own shoe there was a large piece of metal that could have

24  easily been used as a weapon and then, of course, there was a

25  note that the defendant left of things that they needed,

1  people he would contact and the note in which he specifically

2  noted that they were going to jump out the window and that

3  they were leaving because he believed that he had some right

4  to do so.

5          More over, your Honor, if you look past just the

6  circumstances of the offense and you look at the defendant and

7  who he has been and his history will tell you exactly who he's

8  going to be, and that's a dangerous person.  Every single one

9  of the convictions, almost every single one of the convictions

10  that the defendant has in his background are violent.

11          This is an individual who doesn't commit one violent

12  action.  He commits multiple violent actions towards

13  individuals.  The conspiracy to commit murder started out as a

14  solicitation of murder because he hired someone to go and kill

15  another person.

16          The home invasion he actually went in and struck

17  someone in the head and kicked them.  We don't have to look at

18  the categorical approach when we look at who this individual

19  is.  We don't have to look at, well, what's the least

20  objective or what's the least qualifying thing that could

21  happen to meet these definitions.  No.  When we look at this

22  individual, the definition that we can look to is is he

23  dangerous or not?

24          Does there need to be a deterrence against him and

25  others like him?  Does there need to be a sentence that we

1  give to this defendant to ensure that the society and
2  community that he is generally in is protected from more
3  action by him?
4       When it comes down to a sentence, your Honor, we do
5  believe that the sentence that we had originally asked for
6  within the guidelines that we had asked for is still
7  appropriate, quite frankly, because his history is such that
8  it's not only just violent.  It's not only that this is his
9  first drug crime, which would -- we don't normally see with a
10 lot of individuals.
11      We see a lot of drug crimes, they get drug crimes,
12 we get drug dealers and so on.  That's not this individual.
13 We have violent after violent after violent after violent
14 action, and there's nothing else to say about this individual
15 other than, quite frankly, at this point that he is violent
16 and he's willing to do whatever it takes to continue that
17 violence as he showed even when he got into jail and continued
18 to do things that, quite frankly, were dangerous to other
19 people.
20      Your Honor, we believe that the guidelines that
21 you've laid out with the guidelines that your Honor's
22 determined to ensure a guideline sentence would be appropriate
23 of 210 months.  That is the top of his guidelines.  We
24 believe, based on his history, that's appropriate.
25      Quite frankly, I think that if your Honor were to

1  find a variance and vary upward, it would also be appropriate

2  based on his incredibly dangerous history, an individual who

3  takes matters into his own hands at each and every turn, which

4  is exactly what happened in his escape case.

5  　　　　We believe that another 10 to 15 years of supervised

6  release, the longer it would entail, the better, quite

7  frankly, because this is an individual who has shown time and

8  again that he will recommit offenses regardless whether he's

9  on supervised release or even if he's in jail.  So with that,

10 your Honor, we would ask for a top of the guideline sentence

11 as your Honor has determined followed by a lengthy supervised

12 release period.  Thank you.

13 　　　　THE COURT:  Thank you very much.

14 　　　　Mr. Bryning?

15 　　　　MR. BRYNING:  Thank you, your Honor.  May it please

16 the Court and counsel?

17 　　　　THE COURT:  Yes.

18 　　　　MR. BRYNING:  Mr. Bull is 41 years old.  He's almost

19 42.  He was a drug user as well as a drug seller.  I don't

20 think anyone knows how bad drug addiction and how poisonous

21 drugs are than he does.  It's destroyed his family.  It's

22 destroyed his life.  Did he choose to go down this path?  I

23 mean, I don't know.

24 　　　　He probably made a lot of bad choices.  I think when

25 someone's mother and father are both drug addicts and he's

1    neglected and there's really no one else to help, you're gonna

2    make a lot of bad choices, and I think it's important under

3    the 3553(a) factors to look at the person and not just their

4    criminal history, and I know the presentence report lays out

5    pretty much every bad thing a person's ever done in their life

6    in terms of criminal record and it's written by the probation

7    office.

8            It's supported by the Government, and I understand

9    the Government's role is to point out bad things and advocate

10   for high sentences.  The Government is given a lot of power,

11   especially in federal court.  They're given a lot of power and

12   a lot of discretion, and they exercise that in different ways,

13   and in this case you see everything being pulled out to

14   justify a higher sentence in this case.

15           You see prior convictions being used to try to

16   increase the statutory mandatory minimum.  That was

17   successful.  His minimum after your ruling is 15 years.  The

18   Court can't go below that.  You see it in terms of, you know,

19   guideline calculations.  The Government sought 262 to 327

20   months.  Based upon your ruling, the guideline's different.

21   The Government's still seeking that high guideline sentence

22   that they were before.

23           But with that kind of great power also comes great

24   responsibility, and when you look at his life, which is not

25   just an excuse, saying, oh, well, you should feel sorry for

1   him, I'm not asking for you to feel sorry for him any more
2   than you should view him as a really bad person, a bad violent
3   person.
4          I'm not asking that you should view him as a
5   sympathetic person either, but I think in the federal
6   system we try to look at the whole person.  We try to look
7   at their history and characteristics, and the history and
8   characteristics don't just end at somebody's criminal
9   convictions or what's the worst thing they can put down on
10  paper about him.
11         The history and characteristics include what it is
12  that happened to that person throughout the course of their
13  life that caused them to be here now in a federal court
14  charged with a very bad crime facing a lot of years, frankly,
15  most of his productive years in prison and to decide after
16  balancing those what sentence is sufficient but not greater
17  than necessary to serve all those purposes of sentencing.
18         It's a tough job, but that's the federal sentencing
19  job.  I think it's almost easier to say, well, the guidelines
20  say this so he's gonna get this.  That system was done away
21  with with Booker.  Now it's the mandatory minimum and then
22  what's sufficient but not greater than necessary, and in this
23  case you see that Mr. Bull had a horrific upbringing.  I don't
24  think there's any question about that.
25         Both parents are addicts.  He was subject to

1  neglect, probably abuse.  I mean, he can't change those

2  elements of his history, but they can be considered.  It's

3  very unusual -- and one of the things that jumped out to me in

4  reading his presentence report is that it's very unusual that

5  someone who started using methamphetamine at the age of 14,

6  that's paragraph 88, has never had drug treatment.

7      Hopefully he will have access to that in the Bureau

8  of Prisons.  We're requesting a judicial recommendation for

9  the RDAP program.  I don't think, based upon -- I don't know

10 if he'll receive credit for it or not, but he wants that

11 treatment, and I think it's high time if not past time for him

12 to get some significant drug treatment that means something.

13     So originally what we were asking for in our

14 commentary was a 10-year sentence.  That hasn't really

15 changed.  I think that would be sufficient but not greater

16 than necessary.  I understand that it's impossible for you to

17 enter that sentence, but I think 15 years is the next best

18 thing, I guess, the Court could do.

19     And I don't want to repeat some of the arguments

20 that I already made with the -- in regard to our objections in

21 regard to our motion, but this is not a high-level drug

22 dealer, and the actual meth was meant to get high-level drug

23 dealers.  This is a guy who was dealing rock salt in one of

24 the two controlled buys that is the subject of this

25 prosecution, so he's not a kingpin.

1    Enhancement such as 851, career offender, even that
2    distinction between actual meth and mixture are somewhat
3    inappropriate in this case.  This is 72.6 grams of
4    methamphetamine.  Not every drug case merits a sentence of 262
5    or as high of a sentence as you can give a person, especially
6    when you consider that it costs over $40,000 a year to
7    incarcerate somebody in the Federal Bureau of Prisons.

8    That's necessary at times, but in this case you
9    actually see glimmers of hope in this person.  If you just
10   looked at his criminal record and said, well, you know, he's
11   done bad things, he's been convicted of the state crimes.
12   Without looking at those, I think that does a disservice to
13   Mr. Bull, and one of those glimmers of hope I see in the
14   presentence report is paragraph 95 through 97.

15   Those are his job attempts.  He had a job as a
16   junker.  He had a job in a tire place.  He had another -- for
17   a short period of time a job at another place for another
18   short period of time, but he was capable of going out and
19   trying to earn a legitimate living.

20   I think that shows some hope.  I think another thing
21   that jumps out is that paragraph 83 where although he'd been
22   diagnosed with ADHD and anxiety, he was placed on Gabapentin
23   when he was in jail, and Gabapentin seemed to make a
24   difference to him but then he stopped taking it or it was no
25   longer available to him.  I don't know which it was.

1          What's surprising to me is he never received a

2    diagnosis of post-traumatic stress disorder because looking at

3    his family history, what he's been through, it's surprising to

4    me that that diagnosis was not made as well.  So he's got some

5    hope.  You start looking then at, well, what has he actually

6    tried to do in life?

7          Has he ever really tried to do anything positive

8    with his life or has he just been out being a bad guy the

9    entire time?  And I think the presentence report does show

10   some of the things he's done that have been good and attempts

11   to do good that show that he is worthy of a sentence that

12   doesn't just throw away the rest of his life.

13         One of those things is -- it mentions in the report

14   that the children were left to care for themselves.  That's

15   paragraph 77, the fourth sentence.  Paragraph 92, he did get a

16   GED, but then paragraph 93 you see that he attended some

17   college and got certificates in custodial automotive repair

18   and you look a little further and see that he actually

19   graduated with honors.

20         This is strange because this is a person that

21   actually does have some potential, maybe if they weren't a

22   drug addict.  Maybe if they were properly medicated for their

23   psych disorder, maybe if they grew up under different

24   circumstances.  I don't know, but for whatever reason this

25   person actually does have the potential to do well, to lead a

1   law-abiding life and support themselves.

2           Then paragraph 94, you see that he again attempted

3   college and got -- for welding for a short period of time but

4   this shows another attempt to aim himself in the right

5   direction.  His writings that were sent to the Court, his --

6   he can write.  He wants to write, and people feel motivated by

7   some of the things he's written.

8           His sister wrote a letter that certainly says that

9   she motivated -- that she was motivated by him.  She's

10  attending New Hampshire College online and she's about to get

11  her Bachelor's of Science in psychology, I think it was, and

12  she wrote a letter saying how she was motivated by her brother

13  and that he's a motivational figure in her life.

14          That's something positive that can be said for Mr.

15  Bull, so he's capable of learning.  He has mental health

16  issues.  He has drug addiction issues and a history of

17  neglect.  It's his sister, Angie.  She calls him an

18  inspiration.  Other family members care about him.  He's lost

19  quite a few of them, mother, father, brother, but there are

20  people out there that care about him, and he does want to do

21  some positive things with his life.

22          So I'd just ask the Court to sentence him to the

23  mandatory minimum in this case, and he's gonna be on

24  supervised release.  If he steps one toe out of line, I'm sure

25  he'll be pulled back into court and sentenced to prison again.

1    Hopefully that won't happen.  He seems to have learned

2    something from this experience, and hopefully he'll get the

3    treatment that he needs and get on the right track, but I

4    would ask for a sentence of 15 years is the lowest sentence

5    this Court can give based upon your ruling, and that's the

6    request of the defense, your Honor.

7            THE COURT:  Thank you very much.

8            MR. BRYNING:  I know Mr. Bull would like to address

9    the Court as well.

10           THE COURT:  Wonderful.  So Mr. Bull, this is now

11   your opportunity to address the Court if you so wish.  Your

12   attorney has spoken on your behalf so you don't have to, but

13   if you would like to make a statement, this is your time to do

14   so.

15           THE DEFENDANT:  Yes.

16           THE COURT:  You can come on up here.  That's fine.

17           THE DEFENDANT:  Your Honor, I've written this letter

18   fifty times and changed it over a hundred.  I've tried to

19   argue my innocence, but I'm not innocent.  I've written

20   letters trying to be manipulating but that's not me or who I

21   am.  I even went out on a limb and wrote something I thought

22   you'd want to hear.  Did I mention you look nice today?

23           None of them have any meaning to me other than it

24   just being another letter.  That was the old me hiding in a

25   protective identity I created as a child, a tough young boy

with no weaknesses.  Today I sit here with no shame and admit
in a courtroom full of strangers I'm a strong man with lots of
weaknesses.

I'm an addict to a lifestyle I grew up seeing,
drugs, abuse, neglect and crime.  Nothing I ever wanted but
everything I always got.  I dream of breaking that cycle so my
kids would never see or go through some of the stuff I had to
go through.  I dream that when they dream, their dreams will
all come true.  I picture a world with no racial
discrimination, child abuse, bullying and communities that
thrive on helping build, not destroy, each other's
personalities.

I sat in jail during the time where we all needed
each other.  COVID 19 was unpredictable, stealing the health
of our loves ones and killing the innocent.  I prayed so many
times to be the next victim.  The lockdowns, days, months of
isolation just became too much, a punishment to all of us I
just couldn't understand.

No contact with the outside world and the unknown in
my family's safety and my mind in a strange place.  Then the
call came that my mom had OD'd.  A few months later my brother
passed away with medical neglect in the county jail.  I wasn't
there for neither one of them.  I didn't even get to say a
respectable good-bye.

I was totally defeated and found no purpose in life.

1    Then out of the blue I told myself it was time.  I never felt
2    so strong.  I never took the time to really explore my own
3    mind.  When I did, there I was just standing there thinking,
4    I'm glad you finally found me.
5            Since then I discovered a creative writer inside of
6    me, offering inspirational stories, love stories, support
7    stories, self-help books and a program called Change in
8    Directions that helps the youth, ex-offenders, low income and
9    law enforcement to all come work together.  Nothing that will
10   change the world but something that will change my world, a
11   future worth fighting for.
12           I accept full responsibility for my actions, and no
13   matter the overcome of today, I will use this time to the best
14   of my ability and reform myself so upon my release the real me
15   will walk out leaving the old me trapped in a cell.  I ask you
16   to grant me leniency so that my three-year-old daughter still
17   has a chance of having a father, that I still have a chance to
18   show my family, this Court and myself that it's never too late
19   to do something that we can all be proud of.  Thank you.
20           THE COURT:  Thank you very much, Mr. Bull.
21           I'm going to take a short recess, and then I'll come
22   out to impose the sentence.  Thank you very much.
23           (Break taken from 2:46 p.m. to 3:04 p.m.)
24           THE COURT:  Thank you.  You may be seated.  I've had
25   the opportunity to consider the arguments of counsel, the

1  statement in allocution, the character reference letters, the

2  defendant's commentary, the Government's commentary, and in

3  looking at this case, I've considered all of the sentencing

4  factors contained within Section 3553(a), particularly the

5  nature and circumstances of the offense as well as the history

6  and characteristics of the defendant in this case.

7        When I'm looking at this, I see that obviously, Mr.

8  Bull, you are a relatively young individual.  You're 41 years

9  old.  However, when I'm looking at your criminal history and

10  what your lifestyle has been for the remainder of -- for your

11  adult life coming up to here, it has been involved in the

12  criminal justice system.

13        It has been either in prison or facing further

14  charges, and I do look at the nature of what those offenses

15  were.  This isn't a situation where it was, you know,

16  possession of drugs or selling drugs.  I mean, there were

17  violent offenses and so -- and I've looked at the period of

18  imprisonment that you've already been sentenced to and that

19  you've had to go through, and it does not appear as though the

20  imprisonment stops you from the conduct when you are released.

21  So I'm looking at that.

22        I am considering you as a whole person today.  It is

23  not just your criminal history, but it is something that

24  informs me as to your likelihood to reoffend as to protecting

25  the public from further danger from your actions, and I do

1   have to consider both of these cases in conjunction with one

2   another and the idea that you were in custody on a charge, a

3   federal charge, and you then picked up another case of

4   escaping the jail in which you were being held on pretrial.

5           And that's not something that I can overlook for

6   purposes of your likelihood to reoffend and what has happened

7   to get you there.  Now, that doesn't mean that I'm not looking

8   at, and I have, I've considered your history, meaning your

9   upbringing as a child, and it is true.  You had a traumatic

10  childhood.  You don't report enduring any abuse but certainly

11  neglect.

12          You did not have parents -- and I hate when I go

13  through this with defendants because you know your history

14  much better than I do, but I say these things in court so you

15  know that I've considered them, is that you obviously did not

16  have the upbringing or individuals in your life to show you

17  the positive way or the -- I hate to say right or wrong, but

18  any positive influences in your life, as what I can tell, is

19  that you were neglected and you were left to take care of

20  yourself because of the addiction of your parents, and that is

21  something that informs your behavior going forward and I

22  believe it did in this case.

23          That is something I've considered.  I've also

24  considered your substance abuse, and I agree with Mr. Bryning

25  that it is -- it's rather rare that an individual who has been

1    in the system, as we will say it, for as many times as you

2    have has not actually ever went through drug treatment and so

3    I think drug treatment is absolutely necessary.

4            It's something I am going to recommend, and I hope

5    that you take it seriously because I did hear you in your

6    statement and allocution that you said now you see, right?

7    Now you see the man that you want to be, and it has definitely

8    not been the man that you have been, and you recognize that,

9    but those decisions are easier when you're clear headed, when

10   you aren't under the influence of drugs.

11           So you can make that decision here because,

12   presumably, you haven't taken drugs in quite some time, and

13   you just have to remember the clarity that you feel right now,

14   and what you want to be as a person once you are released from

15   custody is informed by the fact you are not taking drugs and

16   so I hope that you take the Residential Drug Abuse Program

17   seriously and you commit to that sobriety or, unfortunately,

18   at least based on your history and also just what happens not

19   just to you but to others, if you go back down that road of

20   drugs, you're just gonna end up back not in this court maybe

21   but definitely a court and so that's something that you are in

22   control of and you can make that decision going forward.

23           It's a hard road.  It's not easy.  I'm not saying it

24   is, because it's very difficult, but you've already taken the

25   first steps of it.  You've gotten through that part, so I'm

1   hoping that you take that seriously going forward.

2           Now, that deals with your mental health.  I

3   understand from the Presentence Investigation Report that you

4   do suffer from anxiety as well as some other mental health

5   concerns and that hopefully you can address those and receive

6   any mental health counseling or take the appropriate

7   medications that are prescribed or what is necessary for your

8   current mental health.

9           Physical health, it appears as though you're in good

10  physical health, and that's a good thing for going forward.

11  I've also considered your employment history.  I would agree

12  with your counsel that you have the ability to hold down a

13  job.  You have the, I guess -- you wanted to for a period of

14  time but not a significant period of time and so for going

15  forward, I do hope that once you are released from custody,

16  that you continue down a path of what you've said you want to

17  do, which is to gain employment.

18          You are educated.  You have this talent in creative

19  writing that can impact others, and maybe you can be able to

20  make an income off of that as well as having stable employment

21  on a daily basis.  That is important.  It is not something

22  that you particularly have had throughout your adult life, and

23  that's a change that I hope you make, but these are all

24  circumstances that I have taken into consideration when

25  fashioning what would be the appropriate sentence in this

1    case.

2          And I've considered, as I've indicated, the -- the

3    nature of the offense, of both offenses, the fact that you

4    were selling -- it's a large amount.  I mean, you're being

5    held accountable for 24,358 kilograms of converted drug

6    weight.  I understand not all of it was ice.  Only 72.6 grams

7    was ice methamphetamine, and the other 11,453 grams of

8    methamphetamine was a mixture containing it.

9          That doesn't take away from the fact that you were

10   absolutely dealing, and in large quantities, so I don't think

11   you're a drug kingpin, but I do think that you have a history

12   of this, and this is something that I have to take into

13   consideration along with the circumstances of the offense

14   contained in the 21 case, which I've already addressed.

15         And so when I'm looking at mitigation, when I'm

16   looking at the aggravation, I do consider also the home

17   invasion.  Now, as my ruling was that that wasn't going to be

18   included for purposes of the 851, however, it is something

19   that I have to take into consideration when looking at the

20   type of criminal conduct.

21         That was not just a situation that you invaded that

22   home.  You did use force, and you did hurt the individual

23   within that home, and that is something that I am considering

24   as part of my sentence here today.

25         So taking all the relevant factors into

1    consideration, I find that the following sentence is

2    sufficient but not greater than necessary to comply with the

3    sentencing purposes set forth in 18 United States Code Section

4    3553 and pursuant to the Sentencing Reform Act, I find that

5    the defendant, Randy Bull, is hereby committed to the custody

6    of the Bureau of Prisons for a period of 210 months in the

7    20-cr-30046 on Count 1.

8         He is also committed to BOP for a period of 12

9    months on Counts 1, 2, 3, and 7 in the 21-cr-30009, which

10   shall run concurrently to each other on those counts and

11   consecutive to the sentence imposed in the 20 case.

12        Now, I find that this sentence -- obviously, I'm

13   accepting the 11(c)(1)(C) that was agreed upon between the

14   parties.  I'm accepting that in the 21 case, and I find that

15   this sentence adequately reflects the seriousness of the

16   offense, promotes respect for the law, provides just

17   punishment, protects the public from further crimes of Mr.

18   Bull and hopefully affords adequate deterrence.

19        I want to make sure that in this you understand that

20   I have determined this sentence after considering not only the

21   guideline range that I found today based on the rulings but

22   also the prior guideline range when considering both of the

23   convictions, and I find that if I had included a home invasion

24   offense and the career offender status, the 210 months that I

25   am ordering here today would have been my sentence under the

1    other guideline as well.

2          This is appropriate, and so I am not just finding

3    this based on the fact that I made those rulings today and

4    it's within the guideline range.  I believe that this is the

5    appropriate sentence under either guideline range.

6          It is also recommended that the defendant serve his

7    sentence in a facility that will allow him to participate in

8    Residential Drug Abuse Program and to maximize his exposure to

9    educational and vocational opportunities.

10         It's my understanding, please correct me if I'm

11    wrong, Mr. Bryning, but your client is requesting that he

12    serve his time in a facility as close to Southern Illinois as

13    possible.  Is that correct?

14         MR. BRYNING:  Yes, your Honor.

15         THE COURT:  All right.  Thank you very much.

16         Now, before I turn to the supervised release, I

17    believe I did state the incorrect supervised release statutory

18    term.  I believe I said 5 years, and it should have been 10

19    years.

20         Is that correct, Mr. Murphy?  I want to make sure I

21    correct that.

22         MR. MURPHY:  That's correct.

23         THE COURT:  All right.  Now, considering that,

24    following your release from custody, sir, you shall serve a

25    10-year term of supervised release in the 20 case and 3 years

1    on each count in the 21 case concurrently to each other as

2    well as concurrent to the 20 case.

3        I believe this term of supervised release is

4    sufficient but not greater than necessary to help you

5    transition back into society, deter you from committing future

6    crimes and it will also allow the defendant to be monitored to

7    ensure public safety and provide him with the needed resources

8    to assist in his rehabilitation.  I think that's important.

9        While on supervised release, you shall not commit

10   another federal, state or local crime, you shall not

11   unlawfully possess a controlled substance.  You shall submit

12   to one drug test within 15 days of release from imprisonment

13   and at least two drug tests thereafter as directed by the

14   probation officer.

15       Pursuant to Title 34, United States Code Section

16   40702, you shall cooperate in the collection of DNA.  You

17   shall -- I'm sorry.  That was -- sorry.  You shall cooperate

18   in the collection of DNA as directed by the probation officer

19   of the Bureau of Prisons.

20       In addition to those mandatory conditions that I've

21   just outlined to you, sir, you are also and I am imposing and

22   you've agreed to the discretionary conditions that we

23   discussed earlier today, and one of those conditions requires

24   that within 72 hours of your release from custody, you must

25   report in person to the probation office in the district in

1    which you are released.

2            I find that you do not have the ability to pay a

3    fine.  No fine is imposed.  A special assessment of $100 in

4    the 20 case is ordered, and $400 in the 21 case is imposed and

5    payable immediately.

6            Can we for a moment address the restitution?  Is the

7    restitution still being requested?

8            MR. JACOBS:  It's already been paid, your Honor, and

9    it would be joint and several.  I don't believe we can request

10   it if it's already --

11           THE COURT:  So it's been paid in full.  Is that

12   correct?

13           MR. JACOBS:  I'm not certain.  I think probation can

14   confirm that.

15           MR. MURPHY:  Yes, Judge.

16           THE COURT:  Okay.  Based on the fact it has been

17   paid in full, I'm not going to order restitution in this case,

18   and I believe that should address all of the remaining issues.

19           Mr. Bryning, do you have any legal objections to the

20   sentence I'm imposing other than what you've already

21   identified or do you request any further elaborations of my

22   reasoning under 3553(a)?

23           MR. BRYNING:  Judge, I understand you're using -- I

24   think, if I'm not mistaken, the 12-month sentence that was

25   agreed in the second agreement and therefore if you're --

1  based upon your ruling of the 1 --

2  THE COURT:  It's 210 plus 12.

3  MR. BRYNING:  You said concurrent.

4  THE COURT:  Mr. Jacobs was giving me the look too.

5  I said 210 in the 20 case, and I said 12 months because on all

6  of the counts they have to be concurrent with each other in

7  the 21 case, but the 21 case sentence is going to be

8  consecutive to the 20 case.  Yes.

9  MR. BRYNING:  Okay.  Thank you, Judge.

10  THE COURT:  That's not a problem.  I'm glad we made

11  that clarification.

12  MR. BRYNING:  The only other clarification I would

13  want you to make, your Honor, is that we have not waived any

14  issues.  I know the Court at one point asked whether we agreed

15  with the ruling regarding the two priors, and I said yes but

16  that should have been yes, based upon the Court's ruling.

17  THE COURT:  Yes.  I mean, I'm not taking that you

18  have -- I mean, Mr. Jacobs --

19  MR. JACOBS:  That's how I understood it as well,

20  your Honor.

21  THE COURT:  Not a problem.  All right.

22  Any objection, Mr. Jacobs?

23  MR. JACOBS:  No objection, your Honor.  One

24  clarification.  I mean, obviously, again, based upon the

25  ruling, no objection to what's been done but obviously reserve

1  for the ruling itself.  I did have one question of

2  clarification.  Would your Honor -- if you had not found the

3  851 enhancement, if you had not found conspiracy to commit

4  murder to be an 851 enhancement, would you still have found

5  this to be the appropriate sentence?

6  THE COURT:  Under either scenario.  Under all of

7  those scenarios I believe this is the appropriate sentence,

8  and I have considered the different ranges that would have

9  been put in place when fashioning this sentence, so I do

10  believe the 210 is the appropriate sentence.  It then --

11  Mr. Bryning, have I addressed all matters in

12  mitigation?

13  MR. BRYNING:  Yes, Judge.

14  THE COURT:  All right.  So the sentence I have

15  stated is the sentence that will be imposed.

16  And Mr. Bull, it is now my duty to inform you that

17  you have the right to appeal the sentence imposed here today.

18  If you wish to do so, you must file a form called a Notice of

19  Appeal.  That must be filed within 14 days of entry of

20  judgment in this case or within 14 days from the Government

21  filing a notice of appeal.

22  And if you are indigent or without money, an

23  attorney would be appointed to handle your appeal without

24  charge, and a transcript of the Court hearings held in this

25  matter would be prepared and given to you without charge for

1    your appeal.  I believe that is all issues that need to be

2    addressed here today.

3            Mr. Bull, good luck to you.  You are remanded to the

4    custody of the United States Marshals.

5            Thank you very much, everyone.

6            Hold on.  Is there a count that needs to be

7    dismissed in the 21 case?

8            MR. JACOBS:  There is, your Honor.

9            THE COURT:  Okay.  I'm sorry.  We have to go back on

10   the record really quick to dismiss a count.

11           MR. JACOBS:  I don't know what count that is, your

12   Honor.  He pled to Count 1.

13           THE COURT:  He pled to 1, 2, 3, and 7.

14           MR. JACOBS:  I believe it's 5 on the 21.

15           THE COURT:  Government's moving to dismiss Count 5?

16           MR. JACOBS:  That's correct, your Honor.  I believe

17   that's correct.

18           THE COURT:  Okay.  That will be dismissed.  Count 5

19   will be dismissed.  Thank you very much.

20           MR. JACOBS:  Thank you, your Honor.

21           (Wherein the hearing adjourned at 3:20 p.m.)

22

23

24

25

1                  REPORTER'S CERTIFICATION

2

3       I, Debra Thornburg, a Certified Shorthand Reporter of the

4  State of Iowa and Federal Official Realtime Court Reporter in

5  and for the United States District Court for the Central

6  District of Illinois, do hereby certify, pursuant to Title 28,

7  United States Code, Section 753, that the foregoing is a

8  correct transcript of the stenographically reported

9  proceedings held in the above-entitled matter and that the

10  transcript page format is in conformity with the regulations

11  of the Judicial Conference of the United States.

12

13                      /s/ Debra M. Thornburg

14                      Debra M. Thornburg
                           Official Court Reporter

15                      United States District Court
                           Central District of Illinois

16

17                      Date:  January 22, 2024

18

19

20

21

22

23

24

25